[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12438
Non-Argument Calendar

_____

D.C. Docket No. 7:16-cr-00007-HL-TQL-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONYAL LOUD,

Defendant-Appellant.

_____

No. 17-12480
Non-Argument Calendar

_____

D.C. Docket No.  7:16-cr-00007-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CASEITA JENKINS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

(September 19, 2018)

Before ED CARNES, Chief Judge, TJOFLAT, and NEWSOM, Circuit Judges.

PER CURIAM:

Tonyal Loud and Caseita Jenkins participated in a conspiracy that involved cashing fraudulently obtained United States Treasury checks at a Walmart store in Georgia.  The gist of the scheme was that some of the conspirators would go to the store with fraudulently obtained Treasury checks, and other conspirators who worked there would cash those checks.  Loud was a customer service manager at the store.  Doris Buie, Oceana Pace, and Vanesha Thompson were cashiers there. Jenkins and her sister, Jennifer Wilson, brought checks to the store to cash.  All six conspirators pleaded guilty to one count of conspiracy to defraud the United States, in violation of 18 U.S.C. §§ 371, 641.

2

I.

Loud and Jenkins challenge their sentences. [1]  Loud contends that the district court erred by enhancing her base offense level by 10 based on its finding that she was responsible for Walmart's loss of $206,108.86, the total amount of loss that the check-cashing scheme caused. [2]  She also challenges the four-level aggravating role enhancement to her base offense level based on the district court's finding that she was an organizer or leader of the criminal activity, and the two-level enhancement based on its finding that she abused a position of trust.  Finally, she contends that her 30-month sentence, which is at the bottom of her guidelines range, is procedurally and substantively unreasonable.

Like Loud, Jenkins contends that she should not have been subjected to a ten-level enhancement to her base offense level because she is not responsible for the total loss amount.  She also contends that her 37-month sentence, which is at the top of her guidelines range, is procedurally and substantively unreasonable.

II.

Law enforcement officers began investigating the check-cashing scheme in early 2012.  In late February, they observed Jenkins meeting a group of people at a

---

[1] Loud and Jenkins' four co-conspirators are not parties to this appeal.

[2] Walmart is the victim because it was on the hook for the total loss amount due to a financial recovery procedure known as check reclamation.  That is a procedure that the United States Treasury Department uses to obtain a refund (reclamation) from institutions that pay Treasury checks over forged or unauthorized endorsements.  See 31 U.S.C. § 3712.

convenience store and then heading to a Walmart store.  The video cameras at Walmart showed that Jenkins provided four fraudulently obtained checks to cashier co-conspirators Pace and Thompson.  Two weeks later, officers interviewed Pace, and the scheme unraveled.

A.

Loud pleaded guilty under a written plea agreement, which included a factual stipulation.[3]  In her plea agreement she swore that she cashed about 20 fraudulently obtained checks for Jenkins in exchange for $75 to $100 per check. Loud also swore that Buie, Pace, and Thompson cashed fraudulently obtained checks for Jenkins.

Although Jenkins also pleaded guilty, she did not, unlike her co-conspirators, enter a written plea agreement with the government.  At her plea colloquy, Jenkins answered questions under oath.  Jenkins said that her role in the conspiracy was limited to providing the four checks to Pace and Thompson in late February.  But the district court asked her whether she was "pleading guilty because you are, in fact, guilty."   She replied "yes."  The district court also asked her whether she "did, in fact, commit the offense charged," and she admitted that she did.

---

[3] Loud's plea agreement also included an appeal waiver, but the government has chosen not to rely on it.

B.

Loud's and Jenkins' presentence investigation reports recommended a base offense level of 6 and added 10 levels because of the $206,108.86 loss amount. See United States Sentencing Guidelines § 2B1.1(b)(1)(F) (Nov. 2016). The PSRs also added four levels because Loud and Jenkins were organizers or leaders of the check-cashing scheme and the scheme involved at least five participants. See id. § 3B1.1(a). In addition, Loud's PSR added two levels because she abused a position of trust — her position as a Walmart customer service manager — in a manner that significantly facilitated the commission of the scheme. See id. § 3B1.3. Loud's total offense level was 19, and her criminal history category of I yielded a guidelines range of 30 to 37 months in prison. Jenkins' total offense level was 17, and her criminal history category of V yielded a guidelines range of 46 to 57 months in prison. The statutory maximum was 60 months. 18 U.S.C. § 371.

C.

At the sentence hearing the government presented testimonial and documentary evidence that the district court found persuasive. The government first called Secret Service Agent Clint Bush to testify about his investigation into the check-cashing scheme. He testified that he witnessed the February 2012 meeting that led to Jenkins cashing fraudulently obtained checks with Pace and

Thompson at Walmart, conduct that was captured on video. He recounted that Loud, working as a customer service manager at Walmart, recruited Buie, Pace, and Thompson to participate in the scheme.

According to Agent Bush's testimony, Loud had admitted cashing about 50 fraudulently obtained Treasury checks, and she stated that about 20 of those were for Jenkins. Bush recounted how Pace had admitted that Jenkins and Wilson brought in to Walmart up to 15 checks to cash. Bush created a spreadsheet containing information related to each of the reclamations that Walmart suffered because of the fraudulently obtained checks that the co-conspirators cashed there. The spreadsheet included the total loss amount of $206,108.86, the name of the Walmart cashier who cashed each fraudulently obtained check, the name of the intended payee, and the check's amount, its number, and its date. According to Bush, Loud had approved some of the checks identified in the spreadsheet under a store policy requiring customer service managers to approve the cashing of checks over a certain dollar amount. The government introduced Loud's written plea agreement.

The government also called Pace as a witness. She testified that Jenkins' role in the scheme was to deliver the checks to Walmart for cashing and that Jenkins had brought in up to ten checks for that purpose. Pace also testified that Loud had recruited her to join the scheme.

The district court then heard Loud's and Jenkins' objections to the PSR. Loud argued that she was responsible for the loss amount of only $134,954.87, the total value of the checks she personally cashed. She also argued that she was subject to neither an aggravating role enhancement nor an enhancement for abusing a position of trust. Jenkins argued that she was responsible only for the loss amount of the 4 checks that she provided in February 2012 ($13,769), and that she was not subject to an aggravating role enhancement.

The district court overruled all of Loud's and Jenkins' objections with one exception. It sustained Jenkins' objection as to the aggravating role enhancement, and, as a result, reduced her advisory guidelines range of 46 to 57 months in prison to 30 to 37. The outcome was a sentence of 30 months in prison for Loud and a sentence of 37 months in prison for Jenkins.

## III.

Loud and Jenkins both contend that the district court erred by enhancing their offense levels by 10 after attributing to each of them the $206,108.86 loss amount of the check-cashing scheme. See U.S.S.G. § 2B1.1(b)(1)(F) (providing for a 10-level enhancement when the total loss amount is more than $150,000 but less than $250,000). We review for clear error a district court's determination of loss. United States v. Barrington, 648 F.3d 1178, 1197 (11th Cir. 2011).

Under the guidelines a district court may find a defendant "responsible for the reasonably foreseeable acts of his co-conspirators in furtherance of the conspiracy." United States v. Baldwin, 774 F.3d 711, 727 (11th Cir. 2014); see also U.S.S.G. § 1B1.3(a)(1)(B). To do so, a district court must first determine the scope of the defendant's criminal activity by making individualized findings, and then determine reasonable foreseeability. See United States v. Hunter, 323 F.3d 1314, 1319 (11th Cir. 2003). A district court may make that first determination by considering "any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002). But a district court's failure to make individualized findings as to the scope of a defendant's criminal activity does not require vacating the sentence "if the record support[s] the court's determination." Id.

The district court did not clearly err by attributing the $206,108.86 loss amount to Loud and Jenkins. Even if the district court failed to make individualized findings, the record supports its loss amount calculation as to each of them.

First, there is the evidence about Loud. She swore in her written plea agreement that she received $75 to $100 for each of the approximately 20 fraudulently obtained checks she cashed for Jenkins. At the sentence hearing Agent Bush confirmed that the government's spreadsheet showed that Loud and

8

several of her co-conspirators cashed numerous fraudulently obtained checks, resulting in a total loss amount of $206,108.86. Bush also recounted various statements by the co-conspirators to law enforcement officers describing how Loud had recruited several of her co-conspirators to participate in the scheme. He also testified that Loud stated that she had cashed about 50 fraudulently obtained checks. And Pace testified that Loud recruited her. The district court did not err in holding Loud responsible for the total loss amount of $206,108.86.

Same with Jenkins. At Jenkins' plea colloquy she confirmed that she was guilty of participating in the conspiracy. In Loud's written plea agreement she admitted that Jenkins provided her with about 20 fraudulently obtained checks, which she cashed. She also recounted that Buie, Pace, and Thompson cashed fraudulently obtained checks for Jenkins. At the sentence proceeding Agent Bush explained that he observed Jenkins cashing fraudulently obtained checks at Walmart and recounted Pace's statement that Jenkins and Wilson brought in to Walmart up to 15 checks to cash. And there was also Pace's testimony that Jenkins delivered checks to some of the other co-conspirators. The record shows that Jenkins agreed to, and did, fully participate in the scheme. The district court did not err in finding that Jenkins was responsible for the total loss amount of $206,108.86.

In short, the evidence in the record supports the district court's loss amount calculation as to both Loud and Jenkins.  The court did not err in applying a ten-level enhancement.[4]

## IV.

Loud also challenges the four-level enhancement to her base offense level based on the district court's finding that she was an organizer or leader of the check-cashing scheme.  And the two-level enhancement based on the district court's finding that she abused a position of trust.

## A.

Loud contends that the district court erred by finding her an organizer or leader of the check-cashing scheme under § 3B1.1(a).  She argues that she was a mere middleman.  Under § 3B1.1(a), a four-level enhancement is warranted "[i]f the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  To make that determination, a sentencing court considers, among other things, the "exercise of decision-making authority," the "nature of participation in the commission of the offense," and "the recruitment of accomplices."  United States v. Vallejo, 297 F.3d 1154, 1169 (11th Cir. 2002) (citing U.S.S.G. § 3B1.1 cmt. n.4).  Not every factor

---

[4] In light of all of that evidence, we also reject Loud and Jenkins' argument that the government failed to present, by a preponderance of the evidence, reliable and specific evidence linking each of them to the loss amount.  See United States v. Cobb, 842 F.3d 1213, 1218–21 (11th Cir. 2016).

10

must be present, and we give deference to the district court's decision to apply

§ 3B1.1(a).  See United States v. Ramirez, 426 F.3d 1344, 1356 (11th Cir. 2005).

The district court's finding that Loud acted as an organizer or leader of the

check-cashing scheme was not clearly erroneous.  The government introduced

evidence at the sentence hearing that Loud: (1)  recruited Buie, Pace, and

Thompson to join the conspiracy; (2) paid Buie, Pace, and Thompson for cashing

fraudulently obtained checks; (3) used her position as a Walmart customer service

manager to approve the cashing of fraudulently obtained checks; and (4) personally

cashed $134,954.87 worth of fraudulently obtained checks.  That's a lot more than

merely arranging for others who were already cashing fraudulently obtained

checks to keep doing so, which is how Loud characterizes her role.

B.

Loud also contends that the district court erred by finding that she abused a

position of trust under § 3B1.3.[5]  Section 3B1.3 provides for a two-level

enhancement "[i]f the defendant abused a position of public or private trust . . . in a

manner that significantly facilitated the commission or concealment of the

offense."  U.S.S.G. § 3B1.3.  The guidelines explain that a position of public or

---

[5] We reject Loud's argument that the district court used double counting to enhance her sentence.  A district court may impose both an aggravating role enhancement under § 3B1.1(a) and an abuse of trust enhancement under § 3B1.3 when, as here, the abuse of trust enhancement is not "based solely on the use of a special skill."  See United States v. Bracciale, 374 F.3d 998, 1009 (11th Cir. 2004); U.S.S.G. § 3B1.3.

private trust is "characterized by professional or managerial discretion," and that "[p]ersons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." Id. cmt. n.1.

The district court did not clearly err in finding that Loud abused a position of trust. The record shows that she abused her role as a Walmart customer service manager in a manner that significantly facilitated the commission of the check-cashing scheme. In that role Loud was entrusted with and exercised managerial discretion, such as giving her approval to cash checks over a certain dollar amount under Walmart's policy. So Loud not only had "an advantage in committing the crime because of" her position of trust, but also "use[d] that advantage in order to commit the crime." See United States v. Barakat, 130 F.3d 1448, 1455 (11th Cir. 1997).

## V.

Loud and Jenkins next contend that their sentences are substantively unreasonable. We review for abuse of discretion the substantive reasonableness of a district court's sentence. United States v. Irey, 612 F.3d 1160, 1165 (11th Cir. 2010) (en banc). The 18 U.S.C. § 3553(a) factors guide our review. United States v. White, 663 F.3d 1207, 1217 (11th Cir. 2011). Those factors include, among others, the nature and circumstances of the offense, the history and characteristics

12

of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants.  18 U.S.C. § 3553(a).  The sentence a district court imposes must be "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a), including "the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment of the offense, deter criminal conduct, protect the public from the defendant's future criminal conduct, and provide the defendant with needed educational or vocational training or medical care."  Id. § 3553(a)(2).

Loud and Jenkins have not shown that their sentences are substantively unreasonable.  To begin with, Loud's 30-month sentence and Jenkins' 37-month sentence are within the guidelines range and well below the 60-month statutory maximum sentence. See United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (explaining that a sentence within the guidelines range is ordinarily expected to be reasonable).  And while Loud and Jenkins argue that the district court improperly weighed the § 3553(a) factors, whether the district court should have attached more weight to one factor over another was "a matter committed to [its] sound discretion."  United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008).  Its sentences as to both Loud and Jenkins, which it arrived at after considering both of their objections, fall far short of leaving us "with the definite

and firm conviction that [it] committed a clear error of judgment in weighing the

§ 3553(a) factors." White, 663 F.3d at 1217.[6]

**AFFIRMED.**

---

[6] Loud and Jenkins also contend that their sentences are procedurally unreasonable because the district court found each of them responsible for the total loss amount of the check-cashing scheme. That is a rehash of their arguments about the loss amount calculation, which we have already rejected.

Loud puts forward the added contention that her sentence is procedurally unreasonable because the district court did not adequately consider the § 3553(a) factors. But the district court's acknowledgement that it did consider those factors is enough in itself to dispose of that contention. See United States v. McGarity, 669 F.3d 1218, 1263 (11th Cir. 2012).